### ASTON vs. MORGAN.

**Surety, bound jointly and severally, cannot have the plea of discussion.**

THIS suit was brought upon two bonds; one bearing date in 1796, and the other in 1800, and both signed jointly and severally by the defendant, and two others, in the city of Philadelphia. To this demand, the defendant put in a plea of discussion, wherein he alledged that he had signed these two bonds, not as a principal, but as a co-surety with his brother; and that the principal resided in the same city with the obligee, and had sufficient property therein to satisfy their amount; and that his property ought to be previously discussed, before recourse could be had upon the sureties. To substantiate these allegations, the defendant obtained two commissions, for the examination of witnesses in the state of Pennsylvania; but these not being returned within the prescribed term, the plaintiff proceeded to trial, and obtained judgment, without argument, on the last day of the last term; the counsel for the defendant, on account of the absence of their testimony, having declined arguing the cause. During the vacation, both of the commissions were returned executed; and, upon

the opening of the present term, the defendant ob-
tained leave to enter a motion for a new trial.   In
the argument of this motion, *the Court* doubted
whether, in case of a rehearing, the testimony pro-
duced by these commissions (being parole) could
be received?   Or, if received, whether the laws
of this state could be permitted so far to prevail, as
to enable the defendant to support his plea?—and
directed the attention of the counsel to these points.
And now,

*Ellery* and *Duncan*, for defendant.   The points
raised by the court, for consideration, are :

1. WHETHER, in this case, parole testimony
   can be admitted, to shew who is principal,
   and who surety, upon these bonds?

2. How far the laws of this state will be per-
   mitted to control those of the state where the
   bonds were executed?

IF we succeed upon the first point, we shall
render applicable the testimony produced by our
commissions; and if we shew, upon the second,
that the laws of this forum are so far to prevail in
this suit, as to maintain the defendant's plea of
discussion, the court will then be satisfied that we
have a meritorious defence, and we trust will per-
mit us to avail ourselves of it, upon a rehearing.
In this event, we shall be able to take the benefit
of our own laws, which protect a surety from be-

T T

FALL 1812.
J. District.

ASTON
vs.
MORGAN.

ing prosecuted, until a prior discussion had of the property of the principal; unless the plea of discussion be *expressly* renounced by the surety, or the renunciation thereof legally *implied* from the instrument itself. *Civil Code*, 428.

.1. THE authorities on the subject of the admissibility of parole testimony, to explain or contradict a deed, are numerous, but contradictory; the general rule undoubtedly is, that it cannot be received; but the exceptions to this rule are numerous, and we think the present case comes within them. Relief will always be granted against deeds, upon the ground of *fraud*, *trust*, *mistake*, *oppression*, or *imposition*; in all which cases, the fact, which is the ground of relief, is permitted to be established by parole testimony. *Ross* vs. *Norvell*. 1 *Wash. Rep.* 16. In this case, there had been an absolute bill of sale of certain slaves, with a warranty, and a receipt for the consideration indorsed; yet, upon the suggestion that the conveyance, though absolute in form, was intended as a mere security, the defendant was suffered to shew this fact by parole testimony; and upon so shewing it, permitted to redeem. In the case of *Washburn* vs. *Merrils*, 1 *Day. Ca.* 139, the court admitted a witness, to prove that a deed, executed as an absolute deed, was intended to have been executed as a mortgage deed; and the court, upon this being thus proven, decreed a redemption of

the land so conveyed.   In the case of *Nicholas's*
*Ex'rs.* vs. *Tyler*, 1 *Hen. & Mum. Rep.* 332, the
defendant was allowed to prove, by *circumstantial*
evidence, that the debt, for which a bond had been
given, was originally payable in specie ; and there-
fore the bond, though given in paper money times,
not subject to the scale of depreciation.   And in
the same reporter, *p.* 429, the evidence of *cir-
cumstances* was admitted to set aside a contract
under seal.   So, in the state of New-York, a de-
fendant was permitted to introduce a witness, to
prove that the plaintiff, after the execution of a
special agreement, agreed to enlarge the term of
performing the stipulations contained in it. 1 *John.
Ca.* 22, 3 *John.* 528, 2 *Call.* 5, 125.   Also, in
Pennsylvania, the obligor of a bond had leave to
give the special matter in evidence, and prove, by
a witness, that the bond was void.  2 *Dall.* 171.
*Vide*, also, 1 *Dall.* 17, 193, 424, 3 *Dall.* 506.

In  our  own  court, the case of *Mann & Ber-
nard* vs. *Heirs of Houghton*, is analogous to the
present. Here, there had been an absolute con-
veyance of a plantation and negroes, by a notarial
act, in favor of *Houghton ;* yet the court permitted
witnesses to prove that he acted as the agent of the
plaintiffs in the purchase, and that in reality the pur-
chase was made for them, and with their funds ;
and that, therefore, *Houghton* was only their trus-
tee.

FALL 1812.
I. District.

ASTON
*vs.*
MORGAN.

It may be objected, that the digest of the civil code excludes the use of testimonial proof in the explanation of written contracts. This is to be confined, perhaps, to contracts made within the state, and not to extend to those executed abroad. But, at all adventures, we see in the last case cited, that this principle has not always been held sacred. In that case, there was a notarial act of sale in favor of *Houghton*, which, like a bond at common law, imports absolute verity; but nevertheless, from the allegations contained in the bill, though no fraud was charged, it was suffered to be explained by testimonial proof. And however solemn may be the act, or however sacred its import; or in whatever country, or under whatever forms, it may be executed—the Court, upon proper charges and suggestions raised, will suffer it to be enquired into, and its real character ascertained.

In the present case, it will not be denied, but that we have, in our plea, alledged sufficient matter and shewn sufficient grounds, to entitle us to relief against these bonds. A stronger case but seldom meets the court; the facts, which constitute the ground of relief prayed, are distinctly stated; and all the circumstances of the transaction, are mute, though powerful, witnesses in our favor.

2. On the second point—how far the laws of this state will control those of the state where the bonds were executed—we think we shall be able to shew, that they will, at least, so far prevail, as to maintain the plea of discussion we have filed.

It is a principle of general law, that the laws of every country are obligatory upon all those within its limits, either subjects or aliens ; the latter, during residence, being considered *quoad hoc* subjects. This principle originally went to the total exclusion of all foreign laws in every case ; but, by the courtesy of nations, a relaxation and modification of it was produced, arising from mutual convenience, founded in general utility, and recognised by tacit consent. And now, upon a principle of comity between states and nations, personal contracts, entered into and to be performed in one country, are to be considered and carried into effect, as valid in any other, though a different law there prevail ; of course, they are to be *construed* according to the laws of the country, where the contracts are made, and not according to those, where they are sought to be carried into effect. But as the law of a foreign country is of no force *proprio vigore*, but merely admitted by courtesy, this courtesy will not be so far extended as to produce any *inconvenience* to the state or its subjects, thus admitting it. For this reason, it has been decided that, in the *enforcement* of contracts,

FALL 1812.
I. District.

ASTON
vs.
MORGAN.

the *lex fori*, and not the *lex loci*, always prevails; and that whoever becomes a suitor in a court, must take the laws of the forum he has elected, and pursue his remedy according to its forms: as it would operate a serious *inconvenience*, to change in his favor the course of judicial proceedings. As it respects the *interpretation* of contracts the *lex loci* is supposed to furnish the rule of construction; still subject, however, to the above exception, that no *inconvenience* result therefrom to the state or its citizens, where the contract is sought to be enforced. In either case, however, we think we are safe; if the laws of this forum, which, according to the authorities we shall produce, apply exclusively to the *enforcement* of the payment of these bonds, will not be so far extended, as to admit our plea of discussion; yet, if its rejection shall be shewn to produce an *injury* to our citizens, in the person of any one of them, it will still, on that ground, be entertained by the court; even if the *validity* of the contract itself be thereby affected. We think, however, according to late decisions, that the *lex fori* in the *enforcement* of a contract made in a different state, has been carried to a sufficient length to embrace our case; and even, in some instances, so far as to encroach upon the *validity* of the contract itself. In our case, however, it will be recollected, that we do not seek to *invali-*

FALL　1812.
I. District.

ASTON
vs.
MORGAN.

*date* these bonds, nor to exonerate ourselves from our engagements ; but merely to prevent the engagements of a *principal* from being enforced against a *surety*.

LET us first see, how far the *lex fori* has controlled the *lex loci* in the *enforcement* of contracts, made in a different state.

IN the case of *Smith* vs. *Spinolla*, the defendant, a Portuguese, was held to bail in New-York, on a contract made in Madeira, where, by the laws of Portugal, his property was only liable, and his person secure from arrest; the court would not, however, discharge him upon entering a common appearance, or order an *exoneretur* to be entered upon the bail piece ; and determined, that the *lex loci* applied only to the *interpretation* of contracts, and that the remedy on them must be prosecuted according to the laws of the country, in which the suit was brought. 2 *John. Rep.* 200.

IN the case of *Ruggles* vs. *Keeler*, before the same tribunal, the court also determined, that the *lex loci* applied only to the validity or interpretation of the contract, and not to the time, mode, or extent of the remedy ; it also decided, that in actions upon foreign contracts, it would confine itself to its statute of limitations, without regarding that of the state, where the contract was made. 3 *John. Rep.* 268.

THE same principle was also established, in

FALL 1812.
I. District.

ASTON
*vs.*
MORGAN.

the case of *Nash* vs. *Tupper*, in which the statute of limitations of the state of New-York, was held as a good plea, though the period of limitation in the state of Connecticut, where the cause of action arose, is seventeen years, while that of the state of New-York, where the contract was put in suit, is but six years. 1 *New-York T. R.* 412.

IN the case of *Pearsall & al.* vs. *Dwight & al.* it was decided, that the statute of limitations in the state of New-York was not pleadable in bar to an action brought in the state of Massachusetts, upon a promissory note, made in the state of New-York. 2 *Mass. Rep.* 84.

WE find also the same principle laid down by *Huberus*, and the *lex fori* still further made to control the *lex loci*, in the case supposed of a third possessor of an hypothecated moveable, and in that of an unpublished contract of marriage. *Hub. præ. 2 vol. 1 b. 3 tit. De conflictu legum.*

IN cases, where the statutes of limitation are pleaded, as well as in those put by *Huberus*, it would appear that the *lex fori* was suffered to affect more than the mere form of the demand, and to extend *ad contractûs valorem et ad litis decisionem.* A plea of limitation, by offering a perpetual bar to the action, and totally destroying the remedy, would seem to involve in it the merits. The laws of the forum, which prevent my ever recovering a demand, virtually, at least, inva-

lidate the contract, upon which it is grounded. <span>Fall. 1812.<br>1. District.</span>

And this applies still more strongly to the case

put in *Huberus*, where a private contract of ma-        Aston

trimony, without notice, made in Holland, pro-        *vs.*<br>Morgan.

tects the wife there from the debts of her husband,

and yet will not yield her that protection in a suit

brought against her in Friezeland, where the law

requires a previous publication of the contract.

BE this, however, as it may, the authorities cited bear us out, and shew, that the laws of the forum apply to the time and manner of bringing the action, and to the whole form and extent of the remedy. Compare, then, our plea of discussion, to that of limitation, which has been ruled, to relate only to the *remedy* pursued ; the court there, would decide, according to the authorities produced, that the plaintiff, by suffering the prescribed period to elapse, was too late in forming his demand; here, we say, that the plaintiff, by omiting to bring a previous suit against the principal, is too *early* in forming his demand. And if the prescription of our own forum is to be pleaded in bar to the recovery of a debt, without regarding the act of limitation of the state, where the cause of action grew ; why may we not equally have recourse to them, in order to defeat a demand, which, though seasonable in the state where the contract was made, is here prematurely brought ? Upon what ground, is a plea of prescription, ac-

FALL 1812
I. District.

ASTON
vs.
MORGAN.

cording to our laws, in the one case, to be sustained; and a plea of discussion, according to our laws, in the other, to be rejected? Do they not both equally regard the *time* of bringing the suit? With this difference, however, that the reason is much stronger, and the situation of the plaintiff much less hard, in a case of suretiship, than in that of prescription; inasmuch, as in the latter case, an elapsed period of time can never be recalled; but, in the former, an omitted act may still be performed: in the one case, the bar to the action is perpetual; in the other, but temporary; in the one, the remedy is totally lost; in the other, but only delayed. How would it be, in the case of a promissory note, executed abroad, where three days of grace are given, but prosecuted here, where, we will suppose (as was formerly the case) a longer period is allowed; and this before the full term of grace here was expired; could the plaintiff safely rely upon the law in his own state, which curtailed this period? Is a contract, because made abroad, to give a plaintiff here a *priority* in his demand, not accorded to our own suitors? Is the defendant here, in such a demand, to be placed upon a worse footing, than his fellow citizens? The present defendant, as a surety on a bond, by our laws, can only be legally upon for payment in the default of his principal—and shall any foreign law deprive him of this protection, or

divest him of this right ?  Does not this fall within the restriction upon the introduction of foreign laws, so often repeated by *Huberus ;* viz. that the effects of a contract, entered into at any place, will be allowed, according to the laws of that place, in other countries, *if no inconvenience result therefrom, to the citizens of that other country, with respect to the law, which they demand.* And his application and illustration of this restriction, goes much beyond the present case.   He states, as an example, that by the law in Friezeland, the oldest hypothecation of a moveable, is that to be preferred, even against the third possessor ; yet, if the article so hypothecated, be sued for against the third possessor in Batavia, the suit would be rejected, because the law of that province protects the right of a third person so acquired ; and that this right cannot be divested by the law of another country.   Ought not our law equally to protect the right of a surety ?   And is not the *inconvenience* as great in the one case, as in the other ?

WHETHER the defendant has, or has not, by executing these bonds jointly and severally, tacitly renounced the benefit of discussion, does not come within the scope of the present argument. By signing an instrument *in solido,* in this country, he impliedly waves it ; but these bonds are neither *in solido,* nor in this country.   Neither are

FALL 1812.
I. District.

ASTON
vs.
MORGAN.

we now to inquire, whether the property of the principal, pointed out by the defendant for discussion, ought or ought not to lie within this state; these questions do not fall within the points raised by the court for consideration, and can be best urged, should a rehearing be granted.

*Smith*, for the plaintiff. This motion for a new trial, is grounded on an affidavit, setting forth the arrival of certain depositions taken under two commissions, issued before and returned since the trial of the cause. The object is to have the benefit of these depositions, as evidence, on another trial.

IN no respect is the law better settled, than in relation to the cases in which new trials can be had, in order to let in further evidence. The evidence must be not only sworn to be material, but such as the party, desiring to avail himself of it, had not previously discovered, and could not by the exertion of reasonable diligence, have discovered and produced on the trial. It is, perhaps, needless to cite authority on this point—but see 1 *Will.* 98, 2 *Bay.* 268, 2 *Binney*, 482.

IT would be no difficult task to shew that the motion of the defendant, in every point of view in which it can be regarded, is equally unreasonable and unfounded in law.

SUFFICE it to say, that the defendant, *after*

his interrogatories had been answered by the plain-
tiff under oath, was indulged with leave to take out
commissions to Pennsylvania, returnable at the
end of four months, to obtain evidence of facts,
of which, and of the place where they might be
proved, it appears he was not ignorant at the time
of filing his interrogatories, when, if at any time,
he ought to have issued his commissions. And
that, after the expiration of that delay, instead of
being brought to trial at the commencement of the
last term, he was again, by a great indulgence, al-
lowed further time for the production of his depo-
sitions, until near the close of the term, when, not
having eventured to apply for a further continu-
ance, the cause was tried and judgment rendered.
Shall he now set aside a judgment, for that, which
could not have obtained a postponement of the
trial which resulted in that judgment?

IT will be very needless now to examine the
extent to which the testimony of witnesses, has
sometimes been suffered to be introduced, to ex-
plain, modify, or destroy a deed. It is not denied
by the defendant's counsel, to be the general rule,
that parole evidence is inadmissible for such a pur-
pose; but it is contended that, in cases of fraud,
trust, mistake, imposition, or oppression, as ex-
ceptions to the general rule, the fact sought to be
established may be proved by witnesses, even

FALL 1812.
I. District.

ASTON
vs.
MORGAN.

against a deed. The reasonableness of the cases, generally, that have been cited on this point, is not denied—but, their pertinency is less obvious. Whether there be any thing, in this case, of fraud, or trust, or mistake, or imposition, or oppression, is freely submitted to the scrutiny of the court, even on the evidence of these depositions, and with it, the fate of the cause.

WITH regard to the extent of the influence of the *lex loci*, where a contract is made, when it becomes the subject of a suit in another country—it would be hardly necessary to examine here, even if the principles on that subject were less clearly established. For, admitting for the sake of argument, what is expressly contradicted by the plaintiff's answers under oath to the defendant's interrogatories, and what is not established even by the depositions sought to be introduced—that the defendant, though appearing on the face of those bonds as a principal, was in reality a security, his position would not seem to be in the least improved. And admitting, further, that the laws of Pennsylvania could be laid out of view in the decision of this cause, the court would at least regulate itself by principles, applicable to such contracts, known to the civil law, as are most analagous to those in question. The surety in an obligation *in solido* of the civil law, is equally subject, with the principal, to the immediate payment of

the whole debt.    And even when the surety is not
bound *in solido ;* the creditor may still resort im-
mediately to him for the amount of the debt, and
cannot be obliged to a previous recurrence to the
principal, unless the surety point out to the credi-
tor, property of the principal, within the state, to
be pursued ; and also furnish a sufficient sum of
money, to enable the creditor to conduct the suit.
*Civil Code,* 430.

The application attempted to be made by the
defendant's counsel, of the authorities concerning
the influence of the *lex loci,* where a contract was
made, when a suit is instituted on it in another
country—seems to confound what should always
be kept clearly distinguished—that, which belongs
to the essence of the contract, and that which is
merely accidental to it.    All the cases, that have
been cited by the defendant's counsel on this
point, are admitted to be sound law, and are relied
upon by the plaintiff.    They uniformly establish,
as a general rule, that when a suit is instituted in
one country, upon a contract made in another, the
*lex loci* must furnish the rule of decision in what-
ever concerns the validity, the interpretation, the
essence of the contract ; but that, is to what is
merely accidental to it—the reason ceasing, the
law also ceases—the time, the form, and manner
of instituting and prosecuting suits—the process
allowed, whether arrest of person, attachment of

FALL 1812.
I. District.

ASTON
vs.
MORGAN.

property, or mere citation—the pleadings, the judgment, and execution—and the time after which a suit shall no longer be instituted, *i. e.* be subject to prescription, or a statute of limitations—are regulated by the laws of the country where the suit is brought.

Is the liability of the defendant to pay absolutely a certain sum of money in a certain time—or only upon remote contingency—a question of substance, or of form?

*By the Court.* There is no doubt but the remedy must be prosecuted in every case, according to the course of the *forum* in which the suit is instituted, and this principle has been carried so far as effectually to prevent the *right* from being inforced, when the statute of limitations of the state in which the debtor seeks shelter, prevents a recovery which might be had in the state in which the debt was contracted, and in which the plaintiff and defendant dwelt when they contracted, as in the case of *Nash* vs. *Tupper:* while in other cases, the creditor has been permitted to pursue his debt on a contract, which in the state in which it was entered and the parties did reside, could not support an action, as in the case of *Pearson* vs. *Dwight & al.* The principle, however, is a correct one, and is now too well established in these states, to be shaken. In addition to the cases cited,

there is one determined in the circuit court of the United States for North-Carolina district, in which the plaintiff was permitted, under an act of the legislature of North-Carolina, to maintain a suit against one of the parties to a note executed in Maryland, while, by the laws of the latter state, the defendant's plea, that he was not suable, without his co-obligor, would have availed him. *Patterson*, J.—taking the distinction between the contract and the remedy ; and observing that the contract remained the same, notwithstanding the act, and that the remedy only was extended. *Palyart* vs. *Goulding*. *Martin's Notes*, 78.

IT appears unnecessary to determine, whether in this case, parol testimony may be admitted to shew who is principal, and who surety, upon these bonds. For, admitting, as the defendant contends, that he is only a surety, yet he bound himself to pay in the first instance as a principal, and to pay jointly and severally.

A SURETY is presumed to have renounced the plea of discussion, when it is expressed in the contract of suretiship, that he binds himself as a principal debtor. 1 *Pothier on Obligations*, 290, *n.* 408. The surety, who has constituted himself a principal debtor in the contract, cannot claim the benefit of a discussion ; nor when he engages to pay, if his principal does not on a given day.

X x

FALL 1812.
I. District.

ASTON
*vs.*
MORGAN.

Neither is the plea of discussion allowed among merchants or bankers. 1 *Ferriere, verbo Discussion.*  A surety who bound himself *in solido* with his principal, cannot require a discussion of his property.  1 *Denisart, verbo Discussion.  Civil Code*, 428, *art.* 7.

Now, in the present case, the defendant acknowledges he was held and firmly bound, with the principal debtor, in the sum demanded, to the payment of which he bound himself *jointly and severally* with the principal.

HE, therefore, bound himself *as a principal debtor.*

FARTHER, we believe he bound himself *in solido.*

THE words in the bond are, *jointly and severally*, which are synonymous with *in solido, solidairement.*

THE word *solidaire*, is applicable to obligations entered into by several persons, so that each promises and engages to pay alone, the total sum, in the same manner as if he were bound alone.  *Dict. de Trevoux, verbo Solidaire.*

THE obligation is *in solido,* or joint and several, between several creditors, when the title expressly gives to each of them the right of demanding payment of the total of what is due, and when the payment made to any one of them, discharges the debtor. *Civil Code,* 278, *art.* 97.   There is

an obligation *in solido, (solidarité* in the French)
on the part of the debtors, when they are all oblig-ed to the same thing, so that each may be compelled for the whole, and when the payment made by any of them exonerates the others towards the creditor. *Id. art.* 100.

IT is, therefore, clear that the defendant, both on the score of his being bound as a principal debtor, and that of his being bound jointly and severally, cannot have the benefit of discussing the property of his principal.

IF he had, yet his plea would be overruled. It states that his co-obligors have considerable property in Pennsylvania.

BUT the *Civil Code,* 430, *art.* 1, provides that the creditor shall not be compelled to have the property of the principal debtor discussed, when it lies out of the territory.

IN France, the creditor is thought not to be bound to discuss property in the jurisdiction of another parliament. *Arrêtés de Lamoignon, titre des Discussions, art.* 9.

LASTLY, the Court would at all events be bound to overrule the motion for a new trial, as the defendant did not oppose the plaintiff's taking judgment. From this circumstance, we must infer the defendant concluded he had nothing to offer, that could induce us to grant a continuance; and if the absence of the testimony now intended

FALL 1812.  to avail him, was not thought sufficient to obtain
I, District.  a new trial, it must have been deemed so because
ASTON       due diligence was not used in obtaining it, or be-
vs.        cause it was inadmissible or irrelevant.   In either
MORGAN.     of these cases, we are bound not to disturb the
judgment.

NEW TRIAL DENIED.